[Civ. No. 3083.   First Appellate District, Division One.—December 22, 1919.]

## TROPICAL INVESTMENT COMPANY (a Corporation), Respondent, v. EDNA A. BROWN, Appellant.

[1] Jurisdiction — Defective   Summons — Appearance — Waiver.— Where a defendant entitled to a ten-days summons is served with a three-days summons and she fails to move to quash the summons but appears generally by demurrer and submits to the jurisdiction of the court, she cannot thereafter, on appeal, complain of the fact that the summons served was insufficient as to the time therein given her to appear.

[2] Landlord and Tenant—Action to Recover Premises—Pleading —Rent Due.—Where the complaint in an action to obtain possession of certain leased premises is not based upon overdue rent, an allegation as to the amount of rent due is not necessary.

[3] Id.—State of Incorporation—Variance—Error.—Where the verified complaint in such action alleges that the plaintiff was incorporated under the laws of the state of California, whereas it appears at the trial that it was incorporated under the laws of the state of Utah, the variance is too trivial to warrant a reversal.

[4] Id.—Foreclosure of Trust Deed—Want of Notice of Lease.— Where a trust deed to secure a loan is taken without notice of a lease of the premises, the lessee's interest under such lease is foreclosed by the foreclosure of the deed of trust.

[5] ID.—ACCEPTANCE OF ORDER FOR PAYMENT OF RENT—FAILURE TO
DISCLOSE RECEIPT—ESTOPPEL.—Where a lessee accepts the lessor's
order to pay certain rents to the lessor's creditor, who is secured
by a deed of trust to the leased premises, without disclosing to such
creditor that she holds a receipt for such rent, she will be estopped
to assert such receipt for more than she has actually paid, as
against the lien of the trust deed.

APPEAL from a judgment of the Superior Court of Los
Angeles County. John M. York, Judge. Affirmed.

The facts are stated in the opinion of the court.

Arthur C. Vaughan for Appellant.

Milton K. Young for Respondent.

BEASLY, P. J., pro tem.—We are constrained to open
this opinion with the statement that, after patiently exam-
ining the 176 pages of the appellant's brief, we are unable
to form a clear idea therefrom of the essential facts of this
case or the legal points upon which the appellant relies for a
reversal of the judgment. We have, therefore, gone directly
to the record, and from an examination of the pleadings,
findings, judgment, and the evidence, we have abstracted the
complicated facts upon which the cause must be determined,
and endeavored to clear up the legal questions which seem to
arise therefrom.

The purpose of the action is to obtain possession of the
Morris Hotel property of the city of Los Angeles. The com-
plaint contains two counts,—the first in ejectment, the second
upon an unlawful detainer. From the elaborate findings in
the case, it appears that the trial court based its judgment
upon the following facts:

Plaintiff is a corporation organized under the laws of the
state of Utah. On October 30, 1914, defendant Edna A.
Brown and one Howard entered into an agreement, in writ-
ing, by which Howard purported to lease to the defendant
Brown a certain hotel building to be erected on a lot de-
scribed in the complaint, and situated in the city of Los An-
geles, and this building was, when completed, to be called
the Morris Hotel.

The lease was to run for ten years, and to begin December 1, 1915, the term of the lease being orally agreed to be from December 1, 1915, to November 30, 1925. These dates were left blank in the lease, which was signed by the parties, and were inserted later by some unidentified third party without authority from either party to the lease. The lump rent was to be $98,820, payable in monthly installments of $823.50, in advance, on the first day of each month.

The date of the payment of the rent was also left blank, and no time was fixed in the instrument for the beginning of the payment of the rent.

On November 9, 1914, the parties agreed, also in writing, that the term of the lease should commence at the date of the completion and acceptance of the building by the city building department of the city of Los Angeles, which completion, it was agreed, should be not later than February 15, 1915. Thirty days' grace for completion was allowed, but it was stipulated that should this thirty days be exceeded, an amount equal to the rental "to accrue" until the building should be completed and so accepted should be forfeited to the lessee. The defendant Brown took possession of the hotel in October, 1915, and the building was completed on or about November 1, 1915.

On October 28, 1915, defendant Brown paid Howard one thousand dollars, "pursuant to said agreement of October 30, 1914," and "as part consideration for giving said agreement," which provided that $823.50 of this one thousand dollars should apply to the first month's rent to be paid thereunder, and that the balance of said one thousand dollars, to wit, $166.50, was to be applied as part payment for the second month's rent. Contemporaneously with the payment of the one thousand dollars on October 28, 1915, Howard gave Miss Brown a receipt with the O. K. of one Paden initialed thereon, which reads as follows:

"B.    Los Angeles, Cal., Oct. 28, 1915.

"Received from Edna A. Brown Four Thousand Seven Hundred and five 75/100 dollars, in full for rent on Hotel Morris No. 811 E. 5th St., from Nov. 11, 1915, to April 22, 1916.

"This includes the $1,000.00 paid to secure lease.

"$4705.75.    Charles Wellington Howard.

"O. K.—Wm. W. Paden.    B."

The court finds that there was no consideration for this receipt other than the one thousand dollars.

On October 27, 1915, Miss Brown, together with Howard and Paden, applied to the Fidelity Savings and Loan Association for a loan of $1,818, with which to pay a note secured by a chattel mortgage on Miss Brown's furniture situated in the Morris Hotel. The loan was made, and Howard thereupon gave the Fidelity Savings and Loan Association an order on Miss Brown, running against her rent for this amount, which order was accepted by her; and the money was thereupon delivered by the lender to Howard, Paden, and Miss Brown, who paid the debt secured by the chattel mortgage, and obtained the release of the furniture from the lien thereof. The Fidelity Savings and Loan Association had, at no time, any knowledge of the giving of the receipt to Miss Brown for the $4,705.75. Miss Brown, in consideration of this loan, signed another agreement, the meaning of which, apparently, will be important here. It is as follows:

"As holder of lease covering premises known as Lots Five (5) and Six (6), Block Eleven (11) of Wolfskill Orchard Tract, in the City of and County of Los Angeles, State of California, for and in consideration of free rental for the month of November, 1915, and other valuable considerations, including assistance in releasing mortgage on my furniture in the building on said lots, I hereby waive and declare fully satisfied all claims which I have against the lessee under said lease or against the premises, the owners of said premises or the Fidelity Savings and Loan Association, for any damages or loss occasioned through any delay or failure of any kind resulting from delay in completion of the building on said premises, and I hereby accept said building as being fully in accordance with the terms of the lease aforesaid and agree to enter upon possession of the same without delay and to be bound by all the provisions of the lease from this date, *waiving all claims of every sort under said lease up to this day.*"

On June 25, 1914, Howard, to obtain money to construct the building, borrowed fifty thousand dollars of the Fidelity Savings and Loan Association, gave his promissory note therefor, and executed a trust deed on the premises to the Title Guarantee and Trust Company, as trustee, with the Fidelity Savings and Loan Association as beneficiary, to

secure this note, and on June 17, 1915, to complete the building, Howard borrowed another twenty-four thousand dollars, gave his note therefor, and executed another trust deed to the Title Guarantee and Trust Company, as trustee, and the lender as beneficiary, to secure the same. This latter deed was recorded on June 29, 1915. It should be noted, in passing, that both these trust deeds were given before the $1,818 loan and the execution of the contemporaneous instrument, above set forth. Under the latter trust deed the Fidelity Savings and Loan Association advanced further sums to Howard until the total loan amounted to $36,698.

Howard defaulted in the payment of these loans, and on December 17, 1915, the trustees sold the premises under the latter trust deed, namely, the trust deed executed on June 17, 1915. The sale took place on January 15, 1916, the purchaser being the Fidelity Savings and Loan Association, and the amount paid being thirty-eight thousand dollars, and thereupon the Title Guarantee and Trust Company, as trustee, executed a deed to the Fidelity Savings and Loan Association, as purchaser, conveying the property to it.

It is found by the trial court that this deed conveyed the property to the Fidelity Savings and Loan Association, free from the interest of Miss Brown under her lease, or the agreement dated October 30, 1914, as well as all other interests she might claim in the premises. The Fidelity Savings and Loan Association subsequently conveyed the property to one De Garmo, as trustee, and he, as such trustee, in turn, on January 22, 1916, conveyed the property to the plaintiff, Tropical Investment Company. There are certain other claims of defendant which will be noticed: Miss Brown claims that she did not know of the trust deed of June 17, 1915, to the Fidelity Savings and Loan Association, but it was found that she had actual knowledge of it.

The defendant averred that after the sale of January 15, 1916, under the trust deed, the purchaser conveyed the property to Howard. This is found to be untrue.

It is found that the Fidelity Savings and Loan Association and the Title Guarantee and Trust Company had no knowledge of Howard's lease to the defendant at the time of the execution of the trust deed of June 17, 1915, the deed that was foreclosed.

It is alleged by Miss Brown that plaintiff holds the property of the defendant as security for payment of her rent. This is found to be untrue, as is also the allegation that plaintiff holds an assignment of the lease. It is averred by Miss Brown that the sale of January 15, 1916, was made, to defendant, to defeat certain mechanics' liens upon the property. This is found to be untrue.

De Garmo is found to have executed a deed of trust to the Title Guarantee and Trust Company, as trustee, to secure a loan made to him by the Fidelity Savings and Loan Association, in the amount of eighty thousand dollars, but it is also found that the allegation of Miss Brown that the Fidelity Savings and Loan Association is the real owner of this property is false. It is found that the plaintiff is the owner of the property; that defendant is in unlawful possession of it; and that possession was demanded before suit and refused; that defendant's possession is without the consent of plaintiff and unlawful. Rental and damages are found against the defendant in the sum of $2,808, and judgment is given for possession, and damages accordingly.

[1] The first point made grows out of the fact that the complaint contained a count in ejectment and a count in unlawful detainer, and that the summons issued was a "three-days" summons to appear. The facts are, that defendant was, as stated, served with a "three-days" summons. The defendant demurred to the complaint thereupon, and the demurrer was overruled, whereupon the court required an answer from defendant in four days, which answer was filed accordingly. The defendant claims that she was entitled to a ten-days summons upon this complaint. Conceding that, on the count in ejectment, the defendant was entitled to ten days to appear, nevertheless, as she did appear in less time, and demurred and answered generally to the complaint, she cannot now be heard to complain of this error. She should have moved to quash the summons. Having appeared generally and submitted to the jurisdiction of the court without objection, she cannot, at this late date, complain of the fact that the summons served was insufficient as to the time therein given her to appear.

[2] It is argued that the general demurrer to the complaint should have been sustained, because the complaint did

not state the amount of rent due, but the original complaint was not based upon the fact that the rent was overdue. An amendment charging failure to pay rent was added to the complaint at some later period, as to the time of which we are not advised by the record. Probably this amendment was added at the trial. We have assumed, in this state of the record, that the court passed upon the demurrer to the complaint in its original form, and as a complaint not based upon overdue rent need not contain an allegation as to the amount of rent due, the demurrer was properly overruled. It is only in case the unlawful detainer charged is for default in payment of rent that the complaint must state the amount of such rent. (Code Civ. Proc., sec. 1166.)

[3] We are rather uncertain as to the method by which defendant makes her next point. It arises out of the fact that the complaint in the case alleged that plaintiff was incorporated under the laws of the state of California, whereas it appeared at the trial that it was incorporated under the laws of the state of Utah. The complaint was verified by Edward W. Cason, and this verification is attacked upon this ground. We are unable to see where it makes any material difference whether the company was incorporated under the laws of the state of California or under the laws of the state of Utah; and certainly we can find no direct attack under which the court could have avoided this error, if error it was, at the trial of the case. It is too trivial, under the facts of this case, to warrant a reversal of the action, anyhow.

[4] The main fact upon which this judgment rests is that the trust deed of June 17, 1915, the deed that was foreclosed, was taken by the Title Guarantee and Trust Company without knowledge, or notice on its part, or on the part of the Fidelity Savings and Loan Association, of the claims of Miss Brown under her lease. The findings of the court that the Title Guarantee and Trust Company had no knowledge or notice of Miss Brown's claims, when that trust deed was executed, seems to be conclusive upon the point that Miss Brown's interest under her lease was foreclosed by the foreclosure of that instrument.

[5] This being true, ends the case, apparently, but even if it does not do so, the defendant cannot, for other reasons, prevail on this appeal. Miss Brown contends that she had

paid her rent to April 27, 1916, and that, therefore, this action was premature; and the following facts bear on this point: If the receipt for $4,705.75, dated October 28, 1915, was valid, this attack upon the judgment takes on apparently a serious aspect, if the fact of the superiority of the trust deed over Miss Brown's lease be, for the moment, ignored. The trial court, as heretofore stated, found this receipt invalid, and that no consideration had been paid therefor, except the one thousand dollars, and that the receipt was without other consideration. If this be true, as Miss Brown took possession on or about November 1, 1915, the one thousand dollars would have paid the rent for November and a part of December, 1915, and her rent was thus about four months in arrears when the action was begun. Giving her the thirty days' grace provided for in the lease, she was still three months behind hand in her monthly payments of rent at the time the action was begun. The various papers executed on or about October 27 and 28, 1915, will bear careful study, to determine their meaning and their bearing on this question of rent. The actual completion of the building was accomplished on or about November 1, 1915, very near the time of the execution of these papers. Briefly, these instruments were, (A) a receipt for $4,705.75, above referred to, dated October 28, 1915, the amount of which included the one thousand dollars, paid to secure the lease; (B) a paper dated October 27, 1915, above set out in full, signed by Miss Brown, reciting that in consideration of free rental for November, 1915, and other valuable considerations, including assistance in relieving the mortgage on her furniture, she waived and satisfied all claims against her landlord, the lessor, and the Fidelity Savings and Loan Association, for damages, or loss, occasioned by the delay in the completion of the building, and waived all claims of every sort under said lease up to that date, the giving of which receipt for $4,705.75 was unknown to the Fidelity Savings and Loan Association at the time it made the $1,818 loan. So the court found, and upon ample evidence, for the officers of the bank testified that they knew nothing of it—all the agents of the bank except Wadley, who was proved, at the time of the trial, to be in Asia; and the evidence, we think, supports the finding, so far as Wadley is concerned, that he did not know of the receipt.

There was a conflict upon this point, but we cannot disturb the finding based upon the conflicting evidence; (C) the Fidelity Savings and Loan Association took from Howard an order for the $1,818 against Miss Brown's rent, and she accepted this order without disclosing the existence of the receipt for the $4,705.75, above referred to. We think that she cannot, in this state of the facts, be heard to assert her undisclosed receipt for more than the money she had paid, to wit, one thousand dollars. To permit her to do so would be to permit a deliberate fraud upon the bank, which took the order against her rent without any knowledge whatever of this receipt. But even conceding that the receipt for $4,705.75 was all it purported to be, it was not available as a defense against the lien of the trust deed which was foreclosed, for the following reasons: The document of October 28, 1915, executed and delivered after the date of the trust deed of June 17, 1915, (1) satisfied all claims for damages arising out of the failure to complete the building on time; (2) accepted possession of the building as completed; (3) agreed to take possession without delay; (4) waived all claims of any sort under the lease up to that date. It is contended that this document only waived damages for delay in completion, but the last clause of this instrument was unnecessary if the only intent was to waive the accrued damages, as that was specifically waived in a previous clause thereof; and we can see no other meaning which could attach to these words as between her and the Fidelity Savings and Loan Association, which was a party to the instrument, than that she took possession subject to the trust deed of June 17, 1915; in other words, that she waived all claims that her lease was not subordinate to the lien of this trust deed. She had no other claim than this to waive, except those covered by the language of other portions of this document, and, taken as a whole, we think that she took possession under the lease subject to the lien of the Fidelity Savings and Loan Association's trust deed, which was subsequently foreclosed. We regret the necessity of this lengthy discussion, and can only say, as we said at the beginning, that it has been forced upon us by the manner in which the case has been presented.

For the foregoing reasons the judgment is affirmed.

Richards, J., and Kerrigan, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 19, 1920.

All the Justices concurred.